UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                          :
HOLLY HOWERY,                             :    CIVIL ACTION NO.
                                          :
       Plaintiff,                         :
                                          :
v.                                        :
                                          :
ESPN TECHNOLOGY SERVICES, INC.,           :
                                          :
       Defendant.                         :
_____ :          August 7, 2020

## COMPLAINT

### JURISDICTION AND VENUE

1. This suit is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et seq*, the Civil Rights Act of 1966, as amended, 42 U.S.C. §1981 *et seq*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§46a-60(b) and 46a-100 *et seq*.

2. Jurisdiction of this action is invoked pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, in that the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because this is the district in which the cause of action arose.

### PARTIES AND ADMINISTRATIVE PREREQUISITES

4. The plaintiff, Holly Howery ("plaintiff" or "Howery"), is a citizen of the United States, actually residing in Holyoke, Massachusetts.

5.      Defendant ESPN Technology Services, Inc. ("defendant" or "ESPN") is a Delaware corporation which has a business address of 1 ESPN Plaza, Bristol, CT 06010, and a place of business located at 935 Middle Street, Bristol, CT 06010. The defendant is a wholly owned subsidiary of The Walt Disney Company ("TWDC" or "Disney").  At all times relevant to this complaint, defendant was engaged in a business affecting commerce.

6.      At all times relevant to this complaint, plaintiff was an employee of defendant, as that term is defined by Title VII, 42 U.S.C. §2000e(f), and CFEPA, Conn. Gen. Stat. §§46a-51(9) and 46a-60.

7.      At all times relevant to this complaint, defendant has been plaintiff's employer within the meaning of Title VII, 42 U.S.C. §2000e(b), and CFEPA, Conn. Gen. Stat. §§46a-51(10) and 46a-60.

8.      The defendant has more than Five Hundred (500) employees.

9.      On or about September 19, 2019, plaintiff filed an administrative charge of discrimination (including on the basis of gender) and retaliation against defendant with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunities Commission ("EEOC").

10.     On or about May 27, 2020, plaintiff received a Release of Jurisdiction from the CHRO and she received a Notice of Right to Sue from the EEOC on or about July 8, 2020.

11.     Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

12. Plaintiff is a female.

13. Plaintiff was hired by defendant's predecessor, ESPN Productions, on or about November 10, 2003 as a radio maintenance engineer. On information and belief, a male co-worker who was hired for the same job title and role three weeks after the plaintiff was paid substantially more than she was.

14. In 2007, plaintiff was promoted to the job title of Senior Engineer, and in 2012 she was again promoted, to the job title of Associate Director. Plaintiff has remained in that job title through the date of this complaint.

15. Throughout plaintiff's employment with defendant, she has performed her job responsibilities in a dedicated and effective manner and has received consistently positive feedback about her work.

16. During the course of her employment Disney has undertaken several re-organizations that have impacted the business unit in which the plaintiff is employed. In about January 2018 Disney announced that ESPN's technology group where the plaintiff worked was moving into a new business unit known as Direct to Consumer and International ("DTCI") segment, which includes Disney's streaming services. Beginning in about June 2018 DTCI began appearing on the plaintiff's paychecks. Since about January 2018, the department in which the plaintiff works has been designated Media Engineering Operations ("MEO"), which is responsible for production and distribution support for television and radio programming for the TWDC and related companies internationally.

17.     Throughout plaintiff's employment with defendant, all of her direct managers and peers have been men.  Except for a two-month period in late 2015 and early 2016 when there was one female peer in her department.

18.     On numerous occasions, plaintiff was bypassed for promotional opportunities, paid less than her male co-workers, and disadvantaged in various terms and conditions of her employment with defendant because she is a woman.  More particularly, the plaintiff's compensation has not been commensurate with her experience, leadership and skill when compared to her male coworkers, and her accomplishments have not been credited meaningfully within the defendant's business organization. The plaintiff's accomplishments have been credited to her male managers or co-workers, and when she brought this fact directly to the attention of management, she was told to work it out on her own.

19.     In December 2017, plaintiff completed her Bachelor's degree in Organizational Leadership, and in January 2018, she entered a program for a Master's degree in Organizational Effectiveness and Leadership.  She was awarded her Master's degree on May 31, 2020.

20.     In January 2018, plaintiff was asked by her manager, Kevin Plumb, VP Media Engineering Operations ("MEO"), to assist him with development of an organizational structure and a plan to move the team in a positive direction.  Plumb subsequently told plaintiff that she did a great job with that project.

21.     In or about January 2018 the plaintiff became aware that Plumb had promoted one of plaintiff's team members, Dave Austin, from Senior Video & Audio Platform

Engineer to Associate Director. When plaintiff discussed this action with Plumb, he stated that he had a limited opportunity to promote Austin and that plaintiff should not be concerned because good things would be coming her way - implying that she would be offered promotional opportunities.

22. As part of the MEO organizational restructuring, a decision was made to separate the team into three areas: Level One (Logistics); Level Two (Services); and Level Three (Leads). Plaintiff wrote the job family grids required by the defendant's HR Department to approve the new structure.

23. In or about April 2018, Plumb informed plaintiff that she would be assigned to manage the Level One (Logistics) team.

24. When plaintiff questioned Plumb as to why she was not considered for the Level Two (Services) team, Plumb responded that that position needed to be filled by someone with TV engineering experience. At the time, plaintiff had three years of TV engineering experience in addition to 15 years of radio engineering experience. When plaintiff reminded Plumb of this fact, he replied that he needed someone with more experience than she had.

25. During her employment with defendant, plaintiff has held leadership roles in two organizations designed to help improve diversity and inclusion within ESPN, particularly for women working in technology functions.

26. At a meeting held on or about April 27, 2018 that plaintiff attended with DTCI's Director of HR, ESPN's Director of Diversity and Inclusion, and its VP for Recruitment

5

and Diversity and Inclusion, plaintiff advocated for the addition of an "ally program," the purpose of which plaintiff explained would be to teach people how to support diverse employees and she stated that it was needed because many women employees feel invisible, undervalued and discriminated against at ESPN because of their gender.

27.     During this meeting, the VP, Tracey Pass, who is now VP of HR DTCI, responded very negatively to plaintiff's advocacy and comments, and Pass stated that she thought women who expressed these concerns had "overstayed their welcome." Pass then abruptly ended the meeting.

28.     In or about June 2018, Plumb announced his new leadership team for MEO. Dave Austin, who is male, and who had only been promoted to Associate Director a few months prior, and who had no television experience and far less radio experience than plaintiff, was selected to be the Level Two (Services) leader.  Brian Janes, who is also male, was selected to manage the Level Three (Leads) team.  A third male, Curt Johnson, who was a Director in New York was appointed to be the Director of Logistics.

29.     Under this newly announced leadership structure, Austin, Janes and Johnson would each report directly to Plumb, while plaintiff would report to Johnson, though she would remain physically located in defendant's Bristol facility. While this change did not directly impact plaintiff's salary, it was effectively a demotion, limited her exposure to upper management, and negatively impacted her career mobility.

30.     Due to the business re-organization that resulted in the creation of DTCI in the Spring of 2018, MEO was moved from ESPN into DTCI and the organization's

responsibilities were extended to other Disney business organizations, in addition to ESPN.

31.    On or about June 13, 2018, plaintiff attended a roundtable discussion with Aaron LaBerge, who had been ESPN's EVP & Chief Technology Officer and was taking on that same role with DTCI, which was scheduled to discuss "women's issues" with about twelve women who worked in technology positions.  During the meeting, plaintiff asked if the change to DTCI would create more opportunity to work on the cultural issue so as to increase diversity in the organization. LaBerge initially said yes, but then asked the group if anyone else thought there was a cultural problem.  Almost everyone raised their hands to signal their agreement.  Plaintiff then pointed out that research shows that women leave tech careers because they do not get paid or promoted to the same extent that their male colleagues do and that the culture is hostile toward women workers. This generated pushback from LaBerge and comments by other of the meeting participants about their own experiences at ESPN/DTCI.

32.    On information and belief, LaBerge later referred to this meeting as a "bitch fest."

33.    In or about early July 2018, plaintiff informed Plumb about LaBerge's comment and explained that she was extremely offended that defendant's CTO would refer to a group of women employees as "bitches."

34.    On information and belief, defendant did not take any action in response to plaintiff's communication to Plumb regarding LaBerge's comment.

35.  In about late-April 2019, plaintiff advised Plumb that she was concerned that her Director, Curt Johnson, had been taking credit for plaintiff's work and that Johnson's actions would hamper her promotional opportunities.  Plumb told plaintiff that she should raise the issue directly with Johnson, but he (Plumb) took no further action himself in response to plaintiff's complaint/opposition.

36.  In or about mid-May 2019, Plumb told plaintiff that he was considering revising the MEO's organizational structure.  He accepted plaintiff's request to present a proposal since this was a skill set she had as a result of her organizational management education.  When plaintiff thereafter first presented her ideas, Plumb indicated that he needed to reduce the number of direct reports he had in Bristol and he accepted plaintiff's offer to re-do her proposal.

37.  On or about June 4, 2019, plaintiff provided Plumb with a nine-page recommendation for the re-structured MEO organization.  The proposed structure would have resulted in plaintiff reporting directly to Plumb in a new leadership role, with Austin, Johnson, Janes and a new Associate Director overseeing the Support Center and reporting to plaintiff.

38.  In or about June 2019, Johnson's position in New York was eliminated and he was offered the same role in defendant's Bristol facility.  Johnson declined defendant's offer and instead separated from ESPN on or about June 18, 2019.

39.  Thereafter, plaintiff absorbed all of Johnson's responsibilities, but she did not receive any additional compensation and her title did not change.

40. On or about July 15, 2019, Plumb informed plaintiff that he was no longer considering restructuring the Bristol MEO teams and he stated that he considers the Support Center (which plaintiff manages) his highest priority.

41. On or about July 29, 2019, Plumb informed plaintiff that she would thereafter be reporting to Dave Austin who would be responsible for overseeing/leading both Level One (Logistics) – including the Support Center, and Level Two (Services). Plumb further stated that plaintiff had done such a good job with the Level One (Logistics) team that he could not move her out of her position. He also told plaintiff that another employee would be moved from Miami to join plaintiff's team and report to her to help with the Support Center.

42. On or about August 2, 2019, Austin indicated that he wanted plaintiff to continue to perform the additional duties that she had been performing since Johnson left ESPN, namely the vast majority of the responsibilities of the former director's position (other than some minor responsibilities for India and Radio).

43. On or about August 6, 2019, Austin asked plaintiff to help him assess his Level Two (Services) team in order to implement organizational changes across both the Level One (Logistics) and Level Two (Services) teams. Plaintiff agreed to prepare an organizational plan for the team. In so doing, plaintiff was essentially being asked to replicate the positive organizational and cultural changes she had developed and implemented for the Level One (Logistics) team and the Support Center.

44.   On or about November 15, 2019, Dave Austin was formally promoted to Director of Logistics.  Since that date plaintiff has continued to perform the duties of the former Director of Logistics position without any commensurate compensation.

45.   No formal application process/vacancy announcement was made with respect to the Director position and plaintiff was not given opportunity to pursue this promotion.

46.   Plaintiff is better qualified than Austin for Director of Logistics, including in terms of length and quality of experience, job performance and education.

47.   Defendant became aware of the filing of the plaintiff's discrimination complaint with the CHRO and EEOC on or about September 25, 2019. Since that date, the defendant has engaged in the following adverse actions with respect to the plaintiff's employment:

- Plumb removed plaintiff from the Sr. Leadership team group and leadership team meetings.
- Plumb cut plaintiff out of the information loop in other ways by telling people to only work through Austin and he stopped meeting with her one-on-one.
- Plumb began issuing unreasonable demands and unsubstantiated complaints about the plaintiff and her teams while refusing to provide any specific examples of why he felt the performance was lacking.
- Plumb did not give plaintiff her annual review, given to others in October, until December, after bonuses were issued.  When he did give her the review, he asked her to read it, if she had questions, and it was over in less than 10 minutes.  That is not typical of reviews in her experience either prior to complaint

or for others.

- Plumb stopped using the plaintiff's name in meetings or giving her credit for any work.

- Plumb referred to plaintiff's accomplishments as those of Austin or Austin and his team.

**COUNT ONE:      DISCRIMINATION IN VIOLATION OF TITLE VII**

48.   Plaintiff hereby repeats, realleges and incorporates paragraphs 1-47 above.

49.   On information and belief, defendant's actions in denying plaintiff and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, was motivated by her gender.

50.   Defendant's stated reasons for denying plaintiff, and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, are false and pretextual.

51.   On information and belief, defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department have treated male employees more favorably, have effectively caused plaintiff's demotion,

have denied her and/or bypassed her for promotional opportunities, have caused plaintiff to suffer relative salary and/or compensation disparities as compared to her male coworkers, and/or have resulted in plaintiff's being required to perform additional duties and responsibilities without corresponding compensation.

52. On information and belief, defendant's decisions and actions as described in the above paragraph were motivated by her gender.

53. Defendant's stated reasons for defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department are false and pretextual.

54. On information and belief, defendant's treatment of plaintiff as described in this Count was part of a pattern and practice of treating female employees in technical jobs less favorably than similarly situated male employees.

55. By the actions and conduct described in this Count, defendant has discriminated against plaintiff in violation of the rights secured to her by Title VII, 42 U.S.C. §2000e-2, *et seq*.

56. Defendant engaged in the above discriminatory conduct willfully, with malice and/or with reckless indifference to the plaintiff's federally protected rights.

57. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer damages, including lost wages and compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of

her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

**COUNT TWO:    DISCRIMINATION IN VIOLATION OF CFEPA**

58.    Plaintiff hereby repeats, realleges and incorporates paragraphs 1-57 above.

59.    On information and belief, defendant's actions in denying plaintiff and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, was motivated by her gender.

60.    Defendant's stated reasons for denying plaintiff, and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, are false and pretextual.

61.    On information and belief, defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department have treated male employees more favorably, have effectively caused plaintiff's demotion, have denied her and/or bypassed her for promotional opportunities, have caused plaintiff to suffer relative salary and/or compensation disparities as compared to her male coworkers, and/or have resulted in plaintiff being required to perform additional duties and responsibilities without corresponding compensation.

62. On information and belief, defendant's decisions and actions as described in the above paragraph were motivated by her gender.

63. Defendant's stated reasons for defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department are false and pretextual.

64. On information and belief, defendant's treatment of plaintiff as described in this Count was part of a pattern and practice of treating female employees in technical jobs less favorably than similarly situated male employees.

65. By the actions and conduct described in this Count, defendant has discriminated against plaintiff in violation of the rights secured to her by CFEPA, Conn. Gen. Stat. §46a-60, *et seq*.

66. Defendant engaged in the above discriminatory conduct willfully, with malice and/or with reckless indifference to the plaintiff's statutorily protected rights.

67. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer damages, including lost wages and compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

**COUNT THREE:** **RETALIATION IN VIOLATION OF TITLE VII**

68. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-67 above.

69.     By the acts and conduct described above, specifically including in paragraph numbers 9, 25, 26 and 31 above, plaintiff engaged in protected activity under Title VII by complaining about/objecting to/opposing discriminatory conduct, and defendant was aware of such protected activity.

70.     By filing and pursuing her initial administrative complaint of discrimination with the CHRO and EEOC, plaintiff engaged in protected activity under Title VII, and defendant was aware of such protected activity.

71.     On information and belief, defendant's actions in denying plaintiff and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, was motivated by her protected activity as detailed in this Count.

72.     Defendant's stated reasons for denying plaintiff, and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, are false and pretextual.

73.     On information and belief, defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department have treated male employees more favorably, have effectively caused plaintiff's demotion, have denied her and/or bypassed her for promotional opportunities, have caused

plaintiff to suffer relative salary and/or compensation disparities as compared to her male coworkers, and/or have resulted in plaintiff's being required to perform additional duties and responsibilities without corresponding compensation.

74. On information and belief, defendant's decisions and actions as described in the above paragraph were motivated by her protected activity as detailed in this Count.

75. Defendant's stated reasons for defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department are false and pretextual.

76. By the actions and conduct described in this Count, defendant has retaliated against plaintiff in violation of the rights secured to her by Title VII, 42 U.S.C. §2000e-2, *et seq*.

77. Defendant engaged in the above retaliatory conduct willfully, with malice and/or with reckless indifference to the plaintiff's federally protected rights.

78. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer damages, including lost wages and compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

**COUNT FOUR:     RETALIATION IN VIOLATION OF CFEPA**

79. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-78 above.

80. By the acts and conduct described above, specifically including in paragraph numbers 9, 25, 26 and 31 above, plaintiff engaged in protected activity under CFEPA by complaining about/objecting to/opposing discriminatory conduct, and defendant was aware of such protected activity.

81. By filing and pursuing her initial administrative complaint of discrimination with the CHRO and EEOC, plaintiff engaged in protected activity under CFEPA, and defendant was aware of such protected activity.

82. On information and belief, defendant's actions in denying plaintiff and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, was motivated by her protected activity as detailed in this Count.

83. Defendant's stated reasons for denying plaintiff, and/or bypassing her for promotional opportunities and/or refusing to promote plaintiff to a position that is commensurate with her job performance, knowledge, responsibilities and experience, while promoting a less qualified/less experienced male employee(s) including, but not limited to, to the position of Director, are false and pretextual.

84. On information and belief, defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department have treated male employees more favorably, have effectively caused plaintiff's demotion, have denied her and/or bypassed her for promotional opportunities, have caused

17

plaintiff to suffer relative salary and/or compensation disparities as compared to her male coworkers, and/or have resulted in plaintiff being required to perform additional duties and responsibilities without corresponding compensation.

85.     On information and belief, defendant's decisions and actions as described in the above paragraph were motivated by her protected activity as detailed in this Count.

86.     Defendant's stated reasons for defendant's decisions and actions in connection with the various organizational structuring and restructuring of the MEO department are false and pretextual.

87.     By the actions and conduct described in this Count, defendant has retaliated against plaintiff in violation of the rights secured to her under CFEPA, Conn. Gen. Stat. §46a-60, *et seq*.

88.     Defendant engaged in the above discriminatory conduct willfully, with malice and/or with reckless indifference to the plaintiff's statutorily protected rights.

89.     As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer damages, including lost wages and compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

**DEMAND FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

1. Order defendant to cease and desist from discriminating and/or retaliating against plaintiff and other female employees as alleged herein;

2. Order defendant to place the plaintiff in the position of Director, or the position she would have been in absent the defendant's unlawful conduct;

3. Order defendant to make plaintiff whole for all lost wages and benefits of employment, with interest;

4. Award plaintiff compensatory damages including damages to her reputation and for pain and suffering;

5. Award plaintiff punitive damages;

6. Award plaintiff her reasonable attorneys' fees, costs and interest; and

7. Award plaintiff all other legal and/or equitable relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

The plaintiff hereby demands a trial by jury as to all claims to which she is entitled as a matter of law.

                              RESPECTFULLY SUBMITTED,

                              THE PLAINTFF

By: /s/Nicole M. Rothgeb
Nicole M. Rothgeb ct26529
Gregg D. Adler ct05698
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105-2922
(860) 233-9821
nmrothgeb@lapm.org
gdadler@lapmk.org